DAVIS, Chief Judge,
Concurring.
I concur with the majority in affirming the trial court’s decision to deny Yudin’s motion for judgment of acquittal but for reasons not expressed in the majority opinion. The State’s case against Yudin is entirely based on section 812.022(2), Florida Statutes (2009), which provides that “proof of possession of property recently stolen, unless satisfactorily explained, gives rise to an inference that the person in possession of the property knew or should have known that the property” was stolen and would support a conviction of theft. This same inference will support a burglary conviction if the stolen property was taken during a burglary. Francis v. State, 808 So.2d 110,134 (Fla.2001).
The key part of this legal inference is whether the possession is “satisfactorily” or reasonably explained. In this case, the issue is whether Yudin offered a reasonable explanation of his possession of the stolen property that is inconsistent with his guilt of the theft and burglary that would as a matter of law require the granting of his motion for judgment of acquittal. I agree with the majority that the denial of the motion for judgment of acquittal at the conclusion of the State’s case was proper. As the State argued before the trial court, as of that time Yu-din had not presented a satisfactory explanation of his possession of the stolen property that would support his motion.
However, during the defense case, Yu-din did give an explanation of his possession of the property that required an examination by the trial judge in order to determine whether Yudin’s renewed motion, made at the close of all of the evidence, should be granted or whether the issue of the reasonableness of Yudin’s explanation should be determined by the jury.
In Coleman v. State, 466 So.2d 395 (Fla. 2d DCA 1985), this court determined that whether the jury decides the issue depends on whether the explanation is patently reasonable or arguably reasonable.
[Wjhere a defendant gives a patently reasonable explanation for his possession of recently stolen goods which is totally unrefuted, and there is no other evidence of guilt, the court must direct a judgment of acquittal. If, on the other hand, the explanation is only arguably reasonable or if there is any evidence which places it in doubt, the court should permit the jury to make the decision.
Id. at 397.[2] Accordingly, for us to affirm the trial court’s denial of the motion after Yudin’s explanation had been presented, we must determine that his explanation was only arguably reasonable.
Yudin’s explanation on its face was reasonable and credible. He testified that although he lived with his parents in Highlands County, he had been working for his girlfriend’s father in Palm Beach County and was staying in West Palm Beach. On Sunday, May 3, 2009, he drove back to Highlands County to his parents’ home. He was accompanied by Jerry Costa, whom he had met through his girlfriend’s father. He dropped Costa off in the Spring Lake area of Highlands County as Costa requested and then went to his parents’ home in Lake Placid. After spending *462 that day and Monday, May 4, at home, he met friends that evening and spent the night at a friend’s home in Sebring. Early the next morning, Tuesday, May 5, he got a telephone call from Costa inquiring where they should meet for the return trip to West Palm Beach. He left his friend’s home, went to Wal-Mart to buy his mother a Mother’s Day gift, drove to his parents’ home to deliver the gift, and then proceeded to the Circle K store to purchase gas for the trip back to West Palm Beach. While obtaining the gas, he called Costa to set the exact location of where to meet. After arriving at that location, a blue Plymouth Voyager pulled up and Cos-ta exited the vehicle. Costa and another person, who had been driving the minivan, started loading Yudin’s car with a “lot of stuff.” Yudin testified that the only thing he actually remembered seeing was a desktop computer. He asked Costa where these items came from, and Costa advised him that he purchased them at an auction of an abandoned storage unit.
After loading the car, Yudin and Costa drove back to Palm Beach County. Upon arriving in West Palm Beach, they first went to Costa’s apartment, where they unloaded some of the “stuff.” At Costa’s request, Yudin then drove Costa to the Pawn Unlimited Shop in Lantana, where Costa got out of the car carrying a bag with him. Yudin drove to his girlfriend’s home, and at about 11 a.m., he and his girlfriend went for breakfast at the Village Inn. After dropping his girlfriend off at her home, Yudin then returned to the pawn shop to pick up Costa. Upon entering the car, Costa offered Yudin a Seiko watch. Yudin testified that he assumed that Costa had been unable to pawn the watch as it was an ordinary Seiko and would not be worth much. Yudin put the watch on his wrist and proceeded to drive to David Cavanaugh’s home. Costa told Yudin that Cavanaugh was a friend who might purchase some of the items Costa obtained at auction. Yudin did not know where Cavanaugh lived, but he followed Costa’s directions.
Upon arriving at Cavanaugh’s home, Yu-din stood under a tree and watched while Costa unloaded the car. Costa placed a computer and a couple of bags on a bench by the exterior door of the residence. Ca-vanaugh arrived soon after and engaged Yudin and Costa in conversation. During that conversation, Costa offered to sell Ca-vanaugh the computer. Yudin testified that he never claimed ownership of the computer and that he did not offer to sell it to Cavanaugh.
At trial, Yudin presented additional evidence that validated his explanation. First he introduced a pawn ticket from the Pawn Unlimited Shop on Lake Worth Road in Lantana. It was dated May 5, 2009, and time stamped 12:01 p.m. It showed that several items of jewelry were pawned by Costa at that time. The amount paid to Costa for the jewelry was $607. Because the victims testified that they did not receive any of the jewelry back, there is no evidence to tie the pawned jewelry to the burglary. However, Yudin also presented a pawn ticket dated April 30, 2009, showing that Costa had pawned jewelry at that time as well. Additionally, there was testimony that items of jewelry were found in the car but that none of it was returned to the victims. All of this suggests that it was reasonable for Yudin to believe that Costa was involved in purchasing and selling such items.
Yudin also presented the testimony of David Cavanaugh, who stated that he met Costa at a rehabilitation program and that they were friends. It was Cavanaugh’s understanding that Costa cleaned out garages and abandoned storage units and sold any items of value to individuals or at *463 flea markets. In the past, Cavanaugh had purchased from Costa items including a “couple” of computers, a ladder, a barbeque grill, and a silver coin. Costa called Cavanaugh on May 5, 2009, and told him that he was coming over with some items for Cavanaugh to look at for possible purchase. Cavanaugh was not at home but told Costa to go to the residence. When Cavanaugh arrived, Costa and Yudin already had been there and had placed two computers on the bench at the front of the house as he had instructed. They then returned after he arrived. The items Cos-ta wanted to show Cavanaugh included a laptop computer and a desktop computer. Cavanaugh opened the laptop as he was inspecting it. Cavanaugh testified:
Jerry really didn’t know anything about computers, so Mr. Yudin was showing me the computers. Actually, we never — like I said, we never fired them up, so we never got very far in any conversation as to what they were or — but what little there was said, I talked to [Yudin] about.
Cavanaugh said that the conversation was cut short due to the arrival of the police.[3]
After the police decided that Costa could leave, Costa removed clothing and a closed bag from the trunk of the car and Cava-naugh drove Costa to the motel where he lived. Cavanaugh saw Costa soon after this incident but later learned that Costa had moved to Philadelphia.
The State’s evidence also lends reasonableness to Yudin’s explanation. Yudin’s father testified for the State that Yudin did not stay at home on the night of Monday, May 4, but returned home around 5 a.m. on Tuesday to deliver a Mother’s Day present. When Yudin went to the car to retrieve the gift, a stepladder, his father could see inside the car as the dome light illuminated the interior of the vehicle. Yu-din’s father did not see anything in the backseat but did admit that if items were on the floor behind the front seat or were small enough not to be viewed over the front seat, he would not have been able to see them. When asked if he saw a fifty-two-inch television set, Yudin’s father replied that not only did he not see it but that it would have been impossible to get a fifty-two-inch set in the back seat of Yu-din’s car. He also advised that he did not see a thirty-seven-inch television.[4]
The evidence produced at trial established the existence of a person named Jerry Costa who was known to sell used property, especially jewelry and computers. It established that Costa did pawn some jewelry described by Yudin. The evidence supports the explanation that Costa was the one who placed the stolen items in the backseat of Yudin’s car without Yudin’s involvement or knowledge of the origin of the property. The State produced no testimony or evidence that in any way challenged the reasonableness of Yu-din’s explanation of his possession of the recently stolen property. Thus, as far as *464 the facts as presented by the majority opinion shows, Yudin’s explanation was patently reasonable and the trial court should not have sent the issue of the reasonableness to the jury.
However, Yudin’s testimony also included a factor that the jury would have considered in determining the reasonableness of his explanation. On the stand, Yudin acknowledged that he previously had been convicted of nineteen felonies. Prior convictions can be used in considering the credibility of a witness, § 90.610, Fla. Stat. (2010), and based on his prior convictions, the jury could have concluded that Yudin was not a credible witness, even though his explanation otherwise was patently reasonable. Therefore, I concur with the majority in affirming the trial court’s denial of the motion for judgment of acquittal but for reasons that are not included in the majority opinion. See Coleman, 466 So.2d at 897 (“Appellant, whose credibility was impeached by his admission that he had been convicted of three prior felonies, was found trying to sell the stolen items just a few hours after they had been stolen.... The jury was entitled to conclude that appellant’s explanation was unsatisfactory”).

. This patently reasonable/arguably reasonable distinction has been followed by this court in subsequent cases. See Wilson v. State, 884 So.2d 74 (Fla. 2d DCA 2004); Hau-gabrook v. State, 827 So.2d 1065 (Fla. 2d DCA 2002); State v. Grimmage, 522 So.2d 523 (Fla. 2d DCA 1988).

. Cavanaugh testified that he was not at home when first contacted by Costa. He said that his grandson, who was at the home with some others doing some remodeling work, called the police when a suspicious car drove up to the house and the occupants of the car began to take items from the car to the house. Because he did not know who these persons were or why they were there, he called the police to report the suspicious car.

. The victims testified that two televisions of these sizes were taken in the burglary and that they did not receive either of the televisions after the police apprehended Yudin. The victims further testified that the only items that were returned to them were the desktop computer, the laptop computer, the dresser drawer with the personal items (insurance cards, passports, etc.), and a ring. They testified that in addition to the two televisions, other jewelry was taken.